Kenneth GRAHAM, Petitioner,

v.

J. T. WILLINGHAM, Warden, United States Penitentiary, Leavenworth, Kansas, Respondent.

No. 4031 H.C.

United States District Court
D. Kansas.

March 30, 1967.

5. Cedar Rapids, likewise, was not directionally the next point beyond Kansas City in the *A. E. West Petroleum Co.* case.

John H. Murray, Leavenworth, Kan., for petitioner.

Newell George, U. S. Dist. Atty., Topeka, Kan., for respondent.

## MEMORANDUM, FINDINGS OF FACT, CONCLUSIONS OF LAW

WESLEY E. BROWN, District Judge.

The petitioner, Kenneth Graham, is seeking relief for a writ of mandamus. He contends he is suffering cruel and unusual punishment from respondent. His contentions are as follows:

1. He has been placed in an isolation cell for no apparent reason.

2. He has been prevented from exercising free speech and religion.

3. He has lost good time which should be restored.

This court denied his petition, authorized appeal, and on appeal by stipulation of the parties the case was remanded for hearing.

Thereafter, counsel was appointed for petitioner, an order to show cause issued, respondent filed a verified answer and petitioner filed a reply. A hearing was held, evidence was introduced, and the court took the matter under advisement to prepare its findings and conclusions.

Graham is now serving a sentence in the United States Penitentiary at Leavenworth, Kansas. J. T. Willingham is the Warden.

Graham was convicted in the United States District Court of Florida February 19, 1960 on two counts of forgery and sentenced for a term of four years. Graham, while serving the forgery sentences was convicted of murder in the second degree, sentenced to a term of eight years consecutive to his four year forgery sentence.

In December, 1962, a knife fight resulted in the death of another inmate, the authorities felt he was involved; no criminal action was taken.

In March, 1964, another inmate was murdered by one Brown; Graham was in the company of Brown and testified that he tried to stop the fight. No prosecutions were made, but Graham was sent to the United States Medical Center for Federal Prisoners at Springfield, Missouri in September, 1964. He was returned to Leavenworth with the recommendation that he needed maximum security housing and close controls. He was placed in administrative segregation. His conduct in segregation has been exemplary. He is an orderly in the Segregation Building.

The physical aspects of the Segregation Building (sometimes referred to as the "hole") are adequate and useful. It is known as Building No. 63 at the Penitentiary.

From the testimony and plans submitted to the court, it appears that the Segregation Building is approximately 90 feet long by 72 feet wide composed of two floors.

The two floors contain cells 7 feet wide, 20 feet long, and 10½ feet high, on each side divided by a 10-foot corridor. The second floor also has in addition to cells or rooms, a dormitory and supply room. The building is heated. The cells or rooms are equipped with an aluminum commode and wash basin of standard construction for federal prisons. The rooms have a standard bed, a 6′ 6″ mattress, 4-inches thick, sheet and pillow cases. The rooms are lighted by a single lighting fixture 100-watt bulb with 230 volt bulb, which is 100 volt at night. This is dim but does permit the men to see. Each room has a door and has a window, 6 feet by 3½ feet for light and fresh air.

The men in segregation receive the same food as others in the general population of the prison. They receive three meals a day. They have access to books which are brought in and have commissary privileges including cigarettes, candy, etc., but not things which could be used as weapons. There are no T–V's, radios, or movies in the building, and the men do not usually work, except when on orderly duty. The men cannot go to church but they can have available priests, ministers, etc. come in to see them. Members of the medical staff visit the building daily. Clothes are the same as other members of the prison population. The clothes, bedding, etc. are kept clean.

The men can write and receive mail. Those in segregation are reviewed regularly by members of the disciplinary committee.

Graham is an orderly and is out of his room or cell to perform those duties. He and others in segregation are out in the yard twice a week for 6 or 8 minutes. He is permitted to talk to guards and the other orderly.

Graham is kept in segregation because in the opinion of the penitentiary authorities it is necessary for his protection and the protection of others. He was advised less than 10 months ago and told why he was segregated. His segregation at present is for adjustment, not punishment. He is now segregated based upon Springfield report and reports of case workers at the institution.

Graham is being confined in segregation in accordance with the policy statement shown by Exhibit C. The purpose and use of segregation are stated thus:

"The objectives of inmate discipline and control are consonant with the correctional objectives of the institution, the focus being on individual adjustment and institutional community welfare. In this context, the purpose of segregating inmates from the general population is to insure immediate control and supervision of inmates who are a threat to themselves, to others or the safety and security of the institution."

We do not reach the question of "good time" of some 365 days Graham claims to have lost. He is not subject to release at this time because his present full term by his allegation does not expire until February 18, 1972.

## CONCLUSIONS OF LAW

 The fact that a convicted criminal is placed in a segregated facility described herein is not in and of itself cruel or unusual treatment. (See Kostal v. Tinsley, 337 F.2d 845, 10th Cir. 1964 per curiam).

 The use of such segregation by those having the responsibility for the restraint, discipline and security of convicted criminals is proper. The courts will not interfere with the discretion of prison officials unless there is a clear showing that such segregation is cruel and inhuman. Prison officials will be given broad discretionary powers in carrying out their responsibilities and will not be interfered with unless the exercise of such discretion is arbitrary and capricious. (See Cannon v. Willingham, 358 F.2d 719, 10th Cir. 1966).

 A convicted criminal is not denied freedom of speech or religion when he is segregated as described herein by prison officials in the exercise of their broad discretionary authority. (See Roberts v. Pepersack, 256 F.Supp. 415, D.Md.1966 and cases cited therein).

 The courts will not consider the forfeiture or lost good time claims of a prisoner unless its restoration would entitle the prisoner to immediate release. Such consideration will then be made only after the prisoner has exhausted his administrative remedies and it is factually disclosed that the action of the prison authorities were arbitrary and capricious. (Cannon v. Willingham, 358 F.2d 719, 721, 10th Cir. 1966; Sturm v. McGrath, 177 F.2d 472, 10th Cir. 1949).