**Conrad H. RENTFROW, Joe Lee Bishop, William T. Ridings, Sam Henley, Sam Wilson, Stanford Morris, Preston Cobb, Marvin Arnold, Richard H. Roberts, Eddie Ellison, Plaintiffs,**

v.

**Robert J. CARTER, Director of the Georgia State Board of Corrections, John B. Stanley, Stetson Bennett, Jr., Richard W. Watkins, Jr., Jack T. Rutledge, as members of the Georgia State Board of Corrections, and S. Lamont Smith, Warden of the Georgia State Prison, Reidsville, Georgia, Defendants.**

**Civ. A. No. 12277.**

United States District Court
N. D. Georgia,
Atlanta Division.

Dec. 5, 1968.

Conrad H. Rentfrow, Joe Lee Bishop, William T. Ridings, Sam Henley, Sam Wilson, Stanford Morris, Preston Cobb, Marvin Arnold, Richard H. Roberts and Eddie Ellison, pro sese.

No appearance for defendant.

## ORDER

HENDERSON, District Judge.

Petitioners, ten Georgia state prisoners, five white and five black, seek to file, both for themselves and as representatives of others similarly situated, a "Petition in Forma Pauperis for an Interlocutory Injunction". Jurisdiction is found by the court under 28 U.S.C. § 1343, the action arising under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the Civil Rights Act of 1964, 42 U. S.C. §§ 2000a–1, 2000a–3. Let the petition be so filed.

Petitioners seek to enjoin the application of the order of a three judge panel of this court, in Wilson v. Kelley, 294 F.Supp. 1005 (N.D.Ga. June 27, 1968), "to desegregate all penal institutions within the state * * * on or before January 1, 1969 * * *." Petitioners pray that a "strictly voluntary and freedom of choice" be substituted for the mandatory desegregation compelled by the order.

In support of their prayers, petitioners allege that on November 14, 1968, implementation of the integration order began at the Georgia State Prison, at Reidsville, Georgia, by the mass movement of some thirty (30) black inmates from a formerly segregated admission unit to a formerly all-white admission unit. Petitioners speculate that, from this initial implementation of the order, and from subsequent implementation, violence will result from the tension generated by the admixing of the races. They state that this method and, in fact, any other method of desegregation except "freedom of choice * * * should and would be met with violent resistance by the majority of both the white and black inmates". (Petition, para. 11). They raise this spectre in the light of alleged "frequent and violent fights and killings prevalent among the prisoners". (Petition, para. 15). But despite these allegations, and despite the alleged "acute shortage of custodial officers at the Georgia State Prison", (petition, para. 18), "the present administrative and custodial officers * * * are doing a remarkably efficient job of maintaining order and discipline among the white and black prisoners under the present segregated * * * conditions". (petition, para. 16).

█ It is a long standing policy of the courts not to interfere in prison administration and discipline. See Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1947); Tabor v. Hardwick, 224 F.2d 526 (5th Cir. 1955). At least there must be a clear abuse of discretion before the courts will interfere. See Walker v. Blackwell, 360 F.2d 66 (5th Cir. 1966). But, as evidenced by petitioners' tribute to the effectiveness of the prison staff in presently maintaining order, abuse of discretion is not at issue before the court. The gravamen of this complaint is, that through racial violence resulting from the admixture of an unwilling prison population, petitioners may be deprived of their physical well-being, liberty, and possibly their lives, without Due Process of Law.

█ Acting on the premise that " * * the Due Process and Equal Protection Clauses of the Fourteenth Amend-

ment follow [prisoners] into prison and protect them there from unconstitutional action on the part of prison authorities, carried out under color of state law", the court in Washington v. Lee, 263 F. Supp. 327, 331 (M.D.Ala.1966), aff'd mem., sub. nom. Lee v. Washington, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212, 1213 (1968), held segregation of Alabama penal institutions unconstitutional and ordered that those institutions be integrated. That decision was described by the Supreme Court of the United States as "unexceptionable", and was followed by the *Wilson* court, which ordered desegregation in Georgia penal institutions. The tenor of these decisions, demanding integration within the time allotted (in Georgia by January 1, 1969), dictates that this court not interfere by substituting a "freedom of choice plan" for the "desegregation" order of the three judge panel.

The court notes that petitioners make no showing that the recent implementation has created or added to prison violence. To the contrary, they admit there has been "no trouble" in the integrated unit. (petition, para. 6). However, in the event of an outbreak of racial violence, nothing in the order of the *Wilson* court prevents " * * * the exceptional right of prison authorities 'acting in good faith and in particularized circumstances, to take into account racial tension in maintaining security, discipline, and good order in prisons * * *' ", provided, however, "* * * the danger to security, discipline, and good order must presently exist and be apparent to justify any segregation." *Wilson*, supra 294 F.Supp. at 1009. (emphasis added).

█ Therefore, it is evident that segregation, for the limited purpose of avoiding imminent prison violence, is at the discretion of prison authorities. It is equally evident that this court has no discretion to direct Georgia state custodial officials to adopt a "freedom of choice desegregation plan" in Georgia's

correctional institutions. As the *Wilson* court stated: "This [order] prohibits any standard policy or program of segregated custody at state, county, or local level."

The court notes paragraph eleven (11) from the petition:

Your plaintiffs have unarbitrarily [sic] discussed at length the integration of the Georgia State Prison, Reidsville, Georgia, with a sufficient number of the white and black inmates confined therein, to obtain an opinion representative of a true cross-section of the entire prison population of the prison and the consensus of opinion is that integration of the white and black inmates in their living quarters, should be on a voluntary and/or freedom of choice basis only and that *any other method should and would be met with violent resistance by the majority of both the white and black inmates.*" (emphasis added).

In this connection, the court is not unaware that "[t]he association between men in correctional institutions is closer and more fraught with physical danger and psychological pressures than is almost any other kind of association between human beings". Washington v. Lee, 263 F.Supp. 332 (quoting from Edwards v. Sard, 250 F.Supp. 977 (D.D.C. 1966) ). Moreover, the court realizes that racial tensions will undoubtedly increase the friction between Reidsville inmates. But these tensions do not constitute a license for "violent resistance" which, according to the petitioners, "should and would" be employed by members of their class, to halt desegregation. Rather, the tensions generate a need for a higher degree of restraint, for those who follow the path of "violent resistance" will not halt desegregation, but will merely bring their own conduct to a halt by disciplinary action and criminal sanctions.

Therefore, the petition is denied.