**Peter BREECE, Plaintiff,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, et al., Defendants.**

**Civ. A. No. 1494.**

United States District Court,
W. D. Missouri, C. D.

August 13, 1971.

Peter Breece, pro se.

Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

JUDGMENT OF DISMISSAL FOR FAILURE TO STATE A CLAIM UNDER THE FEDERAL CIVIL RIGHTS ACT

WILLIAM H. BECKER, Chief Judge.

In his complaint herein under the Federal Civil Rights Act, plaintiff, a state convict confined in the Missouri State Penitentiary, states that he was placed in maximum security confinement by defendants because of a charge which resulted in a "felony complaint" being filed against him in the Magistrate Court of Cole County and that the charge in the Magistrate Court has now been dismissed, but nevertheless plaintiff has been kept in maximum security and has thereby suffered the diminution of other rights and privileges generally accorded to those outside the maximum security quarters in the general prison population and has generally suffered cruel and unusual punishment as prohibited by the Eighth Amendment to the Constitution of the United States.

Defendants moved on December 5, 1969, to dismiss the complaint for failure to state a claim under the Civil Rights Act, stating that in Douglas v. Sigler (C.A.8) 386 F.2d 684, the Eighth Circuit Court of Appeals "held that similar allegations did not raise a federal constitutional issue" and that in Hancock v. Avery (M.D.Tenn.) 301 F.Supp. 786, the Court held that cruel and unusual punishment is a "matter which defies concrete definition." They further stated that maximum security detention is not cruel and unusual punishment per se. The motion to dismiss was denied, however, on December 12, 1969, when the Court stated that:

"Even granting that defendants' statements are correct on that issue, however (without so holding), plaintiff's conclusory allegations of cruel and unusual punishment may well still state a claim under the Federal Civil Rights

Act. On a motion to dismiss, the allegations of the complaint are to be taken in the light most favorable to plaintiff. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Great Atlantic & Pacific Tea Co. v. Amalgamated Meat Cutters & Butcher Workmen of North America (C.A.8) 410 F.2d 650; Leimer v. State Mut. Life Assur. Co. (C.A.8) 108 F.2d 302. So taken, the allegation of cruel and unusual punishment may state a claim even within the standards of Hancock v. Avery, *supra*, which in part holds that cruel and unusual punishment may consist in punishment which exceeds the severity necessary to accomplish a legitimate penal aim."

Thereafter, on July 10, 1970, without leave of Court, plaintiff filed another pleading entitled "points of proof" in which he stated complaints largely without the scope of the pleadings herein and by which he therefore raised new issues of fact, including the following:

"10, That since April 16, 1969, Plaintiff has been subjected to some type of tear gas or chemical mace on at least sixteen separate occasions at the specific orders of the defnedants (sic) herein.

"11, That since April 16, 1969, plaintiff has been subjected to high-pressure fire-hoses on at least four separate occasions at the specific orders of the defendants herein.

"12, That from April 16, 1969, plaintiff was denied 'free access to the courts' until October of that same year.

"13, That since April 16, 1969, plaintiff has been constantly subjected to unjustified, unwarranted abuse, maltreatment, harassment, insults, threats, vituperation and calumny by the defendants herein, and at their specific orders.

"14, That since April 16, 1969, the defendants herein, on at least two separate occasions, have threatened plaintiff with physical violence and actual death, or to alternatively destroy his mind, which would be to the same effect.

"15, That on or about June 29, 1969, plaintiff was placed in a seclusion cell and subjected constantly to high-pressure fire-hoses and some type of tear gas or chemical mace by the defendants herein, for a period of four or five days, in an effort to coerce him to sign an admission of violating a (sic) institutional rule.

"16, That on numerous occasions plaintiff has been forced to witness the suicide and attempted suicide of mentally deranged inmates confined to this same unit.

"17, that on one occasion plaintiff was kicked and beaten by a group of armed guards at the direct orders of the defendants herein.

"18, That as a result of said treatment plaintiff has incurred serious, and permanent impairment of his eyesight."

The filing of "points of proof" by plaintiff after the answer of defendants had been filed herein amounts to an attempted amendment of the complaint without required leave of Court. Rule 15, F.R.Civ.P., provides that leave to amend the complaint at this point is within the discretion of the Court. Plaintiff may assert his claims contained in his points of proof in a separate civil action. Therefore, he was directed to show cause why the "points of proof" filed herein should not be stricken in favor of his realleging the claims in a separate civil action.

Further, although as stated in the order of December 12, 1969, herein, denying defendants' motion to dismiss plaintiff's allegations *may* state a claim under the Federal Civil Rights Act, plaintiff must clearly state the facts generally on which his claim is based in order to state a claim under the Federal Civil Rights Act. See Wright, Law of Federal Courts, 2d Ed., § 68, pp. 286–287.

It was therefore ordered on March 24, 1971, that plaintiff show cause in writing within 15 days why his "points of

proof" should not be stricken and why this action should not be dismissed by stating the name and case number of the "felony complaint" and date of dismissal and the specific dates, manner and by whom cruel and unusual punishment has been imposed on him.

Plaintiff's response was filed on April 27, 1971. Therein, plaintiff pertinently stated as follows:

"A, Plaintiff was charged by felony complaint with assault with intent to kill, (Mo.S) 557.180 [559.180], on or about May 12, 1969. Subsequently, plaintiff was arraigned on June 12, 1969, and the charge was dismissed.

"The plaintiff will suffer the Court to remember he is presently confined in the maximum security unit at the Missouri State Penitentiary and has limited access to records and few channels through which information can be obtained; subsequently, the dates and names may be in error though plaintiff verily believes them to be correct.

"Plaintiff can contact the Magistrate Court of Cole County and obtain the correct dates and forward the same to this Honorable Court in form of a Supplement to this Affidavit. In light of the time period in which this order has to be complied with plaintiff submits these dates which, if not correct, are very close approximations.

"B, As further requested by this Court plaintiff now shows how and by whom he was subjected to 'cruel and unusual punishment' and which plaintiff bases his claims under the Federal Civil Rights Act:

"i, It is to be noted that plaintiff has a very serious asthmatic condition which he has suffered from the age of two (2) years.

"ii, On or about June 26, 1969, plaintiff was taken from his cell by guards Looten and Lieutinant (sic) Camper and about six (6) other prison personnel, all of whom were armed with clubs and some type of chemical mace and confined to a 'seclusion' punitive cell (about six feet by nine feet) and five other inmates were present. Plaintiff was divested of his clothing, the cells were filthy with the lack of air and lighting, and commodes which leaked urine and was (sic) very rank. Plaintiff was denied his legal papers and all forms of toilet articles. Plaintiff was forced to sleep on a cold concrete floor.

"Plaintiff was subjected to mace fumes which caused him to choke and regurgitate. Plaintiff was only fed six sandwiches in a three-day period. All of this took place at the direct orders of the defendants herein named and was admitted by said defendants in the Federal Court trial recently conducted before the Honorable Elmo B. Hunter re Beishir, et al, vs. Swenson, et al, No. 1465 and consolidated civil rights cases.

"iii, On October 11, 1969, plaintiff was again in the 'seclusion' punitive cells and the defendants herein named (and specifically defendant Wyrick) beat this plaintiff with billy-clubs and made him crawl up and down the walk. For a three-day period, or until and through October 13, 1969, plaintiff was sprayed with mace every three to four hours and could barely breathe. Five other inmates were also present in this cell during this three-day period. The mace fumes were so thick that a Catholic Priest, Reverend Richard Cronin, stood there with the door open in an effort to clear the air, but his effort was in vain.

"iv, Plaintiff was charged with two counts of violence to a guard and these said charges were ordered dismissed subsequent to a preliminary hearing (See: Cole County Magistrate Court cases 20897 and 20899, June 4, 1970). Thereafter plaintiff was charged with yet another violence to a guard by Indictment returned by a Cole County Grand Jury arising out of the October 11, 1969, incident, for purposes of further harassment by the defendants herein named. Subsequently this charge was dismissed at the request of the Cole County Prose-

cuting Attorney (See: Cole County Circuit Court Case No. 6749, July 25, 1971 (sic)).

"v, In conclusion plaintiff suffered a beating and mace which was very bad for his health and due to the fact that he is completely innocent of the of the (sic) four charges enumerated supra the beatings and macings amounted to 'cruel and unusual punishment'. Additionally he suffered a very serious asthmatic condition at the time."

It is apparent from the course of the pleadings in this case that plaintiff's allegations of cruel and unusual punishment in October 1969 are without the scope of the pleadings. In fact, the complaint was filed herein in August 1969, before any of the October events could have taken place.

The same is true of plaintiff's allegations of cruel and unusual punishment on June 26, 1969. This date was not mentioned in the original complaint and no date approximate to that date was mentioned in the complaint. Plaintiff is obviously belatedly attempting to bring this case within either the June 1969 or October 1969 "riot" cases which are currently being consolidated and heard. But that was not the gist of the original complaint. Plaintiff may file other actions respecting his June 1969 and October 1969 allegations.

Plaintiff must rely in this action on his specific allegations of being retained in maximum security confinement after dismissal of state criminal charges against him on June 12, 1969, and his continued retention in maximum security confinement thereafter. But other reasons than the pendency of a criminal charge may be given for plaintiff's retention in maximum security after the dismissal of the state charges. Defendants were therefore granted an opportunity to state their factual allegations on this issue.

It was therefore ordered on May 10, 1971, that defendants file in writing their traverse of plaintiff's response.

The following averments were made by defendants in their pleading filed on June 15, 1971:

"1. That since on or about the 29th day of April, 1971, petitioner has been classified to K–Hall, Minimum Security, and is no longer maintained in the Maximum Security Detention Facility of the Missouri State Penitentiary, and therefore states no cause of action and the case herein has become moot.

"2. That while being maintained in Maximum Security Detention Facility of the Missouri State Penitentiary for assaulting and stabbing another inmate on the 17th of April, 1969, plaintiff's Chronological Data Sheet as maintained in his file at the Missouri State Penitentiary indicates that on the 30th day of June, 1969 plaintiff was admitted at the prison hospital, and was discharged from that admission on the 10th day of July, 1969. On being returned to Maximum Security, plaintiff's Chronological Data Sheet indicates that on the 1st of November, 1969, a violation report for having contraband in his cell to-wit: a lethal weapon was referred to the Classification Committee. The plaintiff was also involved in an escape attempt on the 11th of October, 1969, and was subsequently charged with assault in the Circuit Court of Cole County having assaulted Guard Officers Casey, and Troyer. Further, a violation report was filed on plaintiff on the 27th of March, 1970 for an assault on another inmate.

"3. Defendants would submit that from the above and foregoing this case has become moot and should be dismissed, and alternatively, would state that the confinement of petitioner to the Maximum Security Detention Facility of the Missouri State Penitentiary was justified because of his assaulted behavior as is exhibited by his Chronological Data Sheet attached hereto as Exhibit 'A'."

If the averments were true and the documents genuine and accurate, plaintiff

could not state any claim of cruel and unusual punishment because of his commitment to maximum security. It appears from the pleadings that plaintiff's initial commitment to maximum security confinement was warranted by the felony indictment which plaintiff admits was then pending in state court and that, regardless of any dismissal of the state indictment at a later time, his continued retention in maximum security was justified by his stabbing another inmate on April 17, 1969; his possessing a knife in November 1969; his escape attempt on October 11, 1969; and the assaults on officers Casey and Troyer and a fellow inmate. See Sostre v. McGinnis (C.A.2) 442 F.2d 178; Krist v. Smith (C.A.5) 439 F.2d 146, affirming (S.D.Ga.) 309 F.Supp. 497; Nolan v. Scafati (C.A.1) 430 F.2d 548; Courtney v. Bishop (C.A. 8) 409 F.2d 1185; Smith v. Swenson (W.D.Mo.) Civil Action No. 1495.

It was therefore ordered that plaintiff admit or deny in writing the averments made and the genuineness and accuracy of the documents submitted on June 15, 1971.

In his response which was filed herein on July 9, 1971, plaintiff admitted "that he finnally (sic) has entered the prison population after two years of 'cruel and unusual punishment' while detained in a special maximum security unit." Plaintiff, however, does not deny the allegations made by defendants and supported by the records submitted by them that plaintiff was in maximum security confinement for stabbing another inmate in April 1969, for possessing a knife in October 1969, destroying state property and attempting escape in October 1969 and assaulting another inmate in March 1970. Plaintiff rather insists on reasserting his claim that a charge of stabbing another inmate in April 1969 was groundless because it was later dismissed by the Magistrate Court until sometime after the arraignment in that Court on June 12, 1969 (July 25, 1969, as plaintiff states in his pleading of April 27, 1971). Otherwise, plaintiff admits that, in the time which meantime intervened he was placed in the seclusion cells "on or about June 26, 27, 28, 29, 1969," because of his involvement in the "disturbance" which took place in the Missouri State Penitentiary at this time. In his response, plaintiff attempts to assert the "cruel and unusual punishment" which he allegedly suffered while in the seclusion cells. Again, however, these are allegations which are outside the scope of the original complaint. For the purposes of the action at bar, the relevancy of this period of placement in maximum security confinement is that it was not, under plaintiff's own allegations, an arbitrary or capricious commitment. Plaintiff has alleged that the facts of his case in this regard are the same as those in Beishir v. Swenson (W.D.Mo. C.D.) 331 F.Supp. 1227. In that case, however, on June 28, 1971, Judge Hunter issued his judgment finding that there had been no arbitrary placement in maximum security confinement or cruel and unusual punishment imposed with respect to plaintiff Beishir during the June 1969 riots in the Missouri State Penitentiary. If plaintiff bases, as he contends that he does, his allegations on the merits of the facts in the *Beishir* case, he cannot state a meritorious claim in that regard in this action.

For the foregoing reasons, it must be concluded by this Court that, by reason of his confinement in maximum security from April 17, 1969, to April 29, 1971, plaintiff does not state any denial of his federal rights. A long period of confinement in maximum security or solitary confinement quarters does not per se constitute cruel and unusual punishment. Sostre v. McGinnis, *supra*; Burns v. Swenson (C.A.8) 430 F.2d 771; Courtney v. Bishop, *supra*; Jackson v. Bishop (C.A.8) 404 F.2d 571. Such confinement, however, can constitute cruel and unusual punishment if arbitrarily or capriciously imposed. Abernathy v. Cunningham (C.A.4) 393 F.2d 775. But it cannot be concluded that maximum security confinement was arbitrarily imposed in this case when it was initially imposed because of an alleged assault on

another inmate, and continued after the dismissal of a state charge based on that alleged offense because of plaintiff's involvement in the June 1969 "riots", his consequent destruction of state property and attempting to escape in October 1969 and his assaulting of another inmate in March 1970. Solitary or maximum security confinement "is permissible where its object is protection of the general prison population or the personnel, protection of the prisoner himself, for disobedience of orders or for prevention of his escape." Krist v. Smith, *supra*, 309 F.Supp. at 500. Plaintiff makes no contention in any of his pleadings that the hearings held at the commencement of each of his terms of maximum security confinement violated any of the standards of institutional due process set down in Nolan v. Scafati, *supra*; Burns v. Swenson, *supra*; or Sostre v. McGinnis, *supra*. In his original complaint, plaintiff did allege that "maximum security confinement of plaintiff subjects him to deprivation of rights, privileges, and immunities, otherwise afforded the other inmate[s] of this prison and further denying him 'due process' and 'equal protection of the laws.' " The specific deprivations complained of were: denial of the privilege to "participate in recreational activities, sports, movies, television, etc."; denial of the "privilege to pursue academic and avocational interests or to order books from the prison or state library"; denial of the "privilege to work at a job assignment and earn monthly wages thereby"; denial of "equal access to the hospital, medical treatment, etc."; denial of "equal opportunity to earn merit time for good behavior"; denial of the privilege "of earning extra merit time by periodical blood donations to the Red Cross"; denial of the "right to participate in religious services relative and necessary to his beliefs"; denial of the "right to possess or use his own personal property, clothing, books, toilet articles, raidio (sic), etc."; and denial of "certain condiments and food items at meal times." In Smith v. Swenson (W.D.Mo.) Civil Action No. 1495, April 26, 1971, this

Court stated with respect to a similar list of alleged deprivals while in maximum security confinement that:

"The denial of certain comforts and rehabilitative benefits do not state denials of any federal rights. There is no federal right to a particular course of training or a particular rehabilitative program. Carey v. Settle (C.A.8) 351 F.2d 483; Diehl v. Wainwright (C.A.5) 419 F.2d 1309; Numer v. Miller (C.A.9) 165 F.2d 986; Vaughn v. Swenson (W.D.Mo.) Civil Action No. 1422. The privileges which plaintiff seeks to enforce in this action are all necessary concomitants of maximum security status and are not deprivals of federal rights when abridged in accordance with a lawful commitment to maximum security confinement."

Further, no request and denial of necessary medical treatment was alleged in the original complaint as was necessary to state the denial of a federal right under the rule of Ramsey v. Ciccone (W.D. Mo.) 310 F.Supp. 600.

■ It is noted that the general and conclusory allegations of the denial of the right to "participate in religious services relative and necessary to his beliefs" and the allegation of the original complaint that plaintiff had

" * * * suffered continuous physical and mental abuse, maltreatment, threats, vituperation, calumny, insults, and on at least two occasions had tear gas and high pressure fire hoses used upon him while helpless in a cell, by the defendants herein and at their specific commands, in violation of the federal constitution's 8th and 14th Amendments. * * * "

might have, with the proper degree of general factual support, constituted statements of denials of federal rights. But plaintiff was granted repeated opportunities to state the facts supporting these allegations and failed and refused to do so, electing instead to vary his allegations and contentions and shift them outside the scope of the allegations

of the original complaint. Thus, in his "points of proof" filed without leave of Court on June 10, 1970, plaintiff repeated his general allegation that he had, since April 16, 1969, been "constantly subjected to unjustified, unwarranted abuse, maltreatment, harassment, insults, threats, vituperation and calumny by the defendants herein, and at their specific orders." But the only instance of use of tear gas or chemical mace which plaintiff mentioned was that incurred by him "on or about June 29, 1969," on facts which he contends are identical to those in Beishir v. Swenson (W.D.Mo.C.D.) *supra,* 331 F.Supp. at 1235. In that case, however, Judge Hunter specifically found:

> "An · application of the announced standards clearly indicates plaintiff was not subjected to cruel and unusual punishment. This conclusion is reached irrespective of which of the [cases defining cruel and unusual punishment] is applied. Certainly the placement of plaintiff in a seclusion cell and exposure to chemical mace, after all lesser methods to regain control failed, does not constitute punishment of such character as to shock the conscience or to be intolerable to fundamental fairness. Nor is this a case where a prisoner has been subjected to physical and mental abuse or corporal punishment disproportionate to the offense for which it was imposed. Likewise, it cannot be said that the defendants, in pursuit of a legitimate penal purpose, namely, to prevent spread of inmate rebellion and to restore order, used force beyond what was necessary to achieve that vital purpose."

Thereafter, on March 24, 1971, this Court entered its order directing plaintiff to make a factual statement supporting his claims and specifically to state:

> "the name and case number of the 'felony complaint' and date of dismissal and the specific dates, manner and by whom cruel and unusual punishment has been imposed on him."

In response to this order, plaintiff mentioned that on or about June 26, 1969, he was deprived of his legal papers by two guards who are not named as defendants in this action, who were "armed with clubs and some type of chemical mace" and subjected to the mace in the manner "admitted by said defendants in the Federal Court trial recently conducted before the Honorable Elmo B. Hunter re Beishir et al., v. Swenson et al., 331 F.Supp. 1227, and consolidated civil rights cases." He also stated that he suffered cruel and unusual punishment on October 11, 1969, and October 13, 1969, by being subjected to mace on those dates. Plaintiff failed and refused to reveal the date of the dismissal of the state charges against him which he contended made his confinement in maximum security until April 1971 unlawful. Nor did he state any facts constituting the denial of the free exercise of his religion. Consequently, on June 25, 1971, plaintiff was requested by the Court to admit or deny the averments of defendants that he was reasonably committed and maintained in maximum security because of the various infractions stemming from June 26, 1969, to March 1970. Again, plaintiff, as noted above, failed to make any specific response to this order. This shifting of factual contentions and obstruction of the Court's efforts to discover the facts supporting plaintiff's claims is alone a reason for the dismissal of plaintiff's complaint because such actions constitute an abuse of the postconviction judicial remedies offered by the Court to plaintiff. See Carrell v. Swenson (W.D.Mo.) Civil Action No. 1597; Umfress v. Swenson (W.D.Mo.) Civil Action No. 1658C; Smith v. Swenson (W.D.Mo.) Civil Action No. 1495, *supra.*

For the reasons stated above, therefore, the complaint herein should be dismissed for failure of plaintiff to allege the denial of any federal right or to state any other basis of federal jurisdiction.

It is therefore

Adjudged that this cause be, and it is hereby, dismissed, without prejudice to the filing of a new action based upon the allegations of fact not contained in the original complaint herein.