**Larry K. ROBY, Plaintiff,**

**v.**

**DEPARTMENT OF CORRECTIONS et al., Defendants.**

**No. CV75–L–52.**

United States District Court, D. Nebraska.

Feb. 16, 1977.

David R. Buntain, Lincoln, Neb., for plaintiff.

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., for defendants.

## MEMORANDUM

URBOM, Chief Judge.

The plaintiff, Larry K. Roby, an inmate at the Nebraska Penal and Correctional Complex, filed a pro se complaint under the Civil Rights Act of 1871, 42 U.S.C. § 1983, in April, 1975, against Joseph Vitek, the Director of Correctional Services for the State of Nebraska, and Robert Parratt, the Warden of the Penal Complex. At that time the plaintiff was confined in the prison adjustment center, which serves as a disciplinary segregation unit. The amended complaint filed by the plaintiff's court-appointed counsel alleges that during the plaintiff's adjustment center confinement the defendants violated his constitutional rights in several respects. He seeks declaratory and injunctive relief, as well as damages.

Before this case came to trial the plaintiff was released from adjustment center confinement; however, shortly after his release he was sentenced to the adjustment center a second time for another rule infraction. The second sentence, like the first, was for a period of one year.

The trial of this case began on December 30, 1976, and because it could not be completed in the one day scheduled, further proceedings were had on January 12, 1977. By the end of the trial the plaintiff had completed his second adjustment center sentence and had been released to the general prison population. At the conclusion of the plaintiff's evidence on January 12 the defendants moved for a dismissal of all claims. That motion was granted, except as to the plaintiff's claim that the conditions of confinement in the adjustment center constituted cruel and unusual punishment, in violation of the plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

Thereafter, the defendants presented evidence, and the case was submitted. I now conclude that the plaintiff is entitled to declaratory relief but not to an injunction or damages.

The plaintiff introduced evidence relating to all aspects of his confinement in the adjustment center. He argues that when the cumulative effect of the deprivations and restrictions is considered, the confinement constitutes cruel and unusual punishment. I do not adopt that view, because I believe that only one aspect of the confinement was so offensive to "the evolving standards of decency that mark the progress of a maturing society", *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958), that it violated the Constitution. The evidence establishes that the conditions in the adjustment center were more unpleasant and restrictive than those which would have been imposed on the plaintiff had he remained in the general population. He was required to remain in his single, small cell for practically all of the time; he was not allowed to participate in most of the activities available to prisoners; he was allowed out of his cell for two shower periods each week, for one-half to one and one-half hours of outdoor recreation per week, and for certain irregular purposes, such as to attend hearings or to go to the hospital; his access to reading material, both legal and non-legal, was restricted; and he was permitted to have only limited personal items in his cell.

■ I find that the evidence fails to establish that the conditions imposed on the plaintiff while he was in the adjustment center were cumulatively so severe that confinement of the general type involved here is cruel and unusual. As to most of the conditions, the only evidence introduced was oral testimony or documentary evidence describing the adjustment center and its operation.[1] The evidence was insufficient to persuade me that most of these apparently unpleasant circumstances injured the plaintiff in any way which was not reasonable in light of the punitive purpose of the confinement. There was, for example, no evidence that the plaintiff's health was endangered by showering, clothing or dietary practices. The testimony concerning the availability of legal, as well as recreational, reading material was that during much of the plaintiff's confinement, he had a reasonable access to such material. Moreover, although the plaintiff testified that the policy became more restrictive during approximately the last two months of his confinement, there was no evidence that he had a need for more reading material than he was able to have.[2]

■ In general, the confinement in the adjustment center was restrictive and harsh. However, it is well established that punitive segregation is not itself cruel and unusual punishment. *Burns v. Swenson*, 430 F.2d 771 (C.A. 8th Cir. 1970). The circumstances of the confinement must be judged in toto and with emphasis upon the basic demands of hygiene and human decency and with due regard for the interests of the defendants in enforcing reasonable regulations. A review of the cases per-

---

1. The most extraordinary of the plaintiff's claims relates not to the conditions at the adjustment center but to conditions allegedly imposed upon him when he was transferred to the prison hospital for a short time after he made attempts at self-mutilation. The plaintiff testified that he was taken to the hospital, stripped naked, chained hand and foot to a bed for a period of 36 hours and forced to take a powerful tranquilizing drug. Several important aspects of this occurrence were left uncertain by the plaintiff's testimony, and with the exception of the testimony of a doctor who remembered few of the pertinent details, no other evidence of the crucial features of this incident was introduced. Moreover, the plaintiff failed to prove a significant connection between the alleged incident and the acts or omissions of the two defendants. Apparently, the prison officials primarily involved were a psychiatrist and a captain, neither of whom was named as a defendant or called as a witness.

2. I do not consider whether the restrictions on access to legal material may have been questionable under *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), because the plaintiff only testified that he was allowed to keep the two law books which he had.

suades me that, with one exception, the conditions to which the plaintiff was subjected were within the boundaries currently imposed by the Eighth Amendment.[3]

The exception is the failure of the defendants to provide the plaintiff an adequate opportunity for outdoor recreation during his long confinement.[4] I find from the evidence that during his confinement the plaintiff was scheduled to be allowed outside in a secured yard adjacent to the adjustment center for a one-hour period each week, that he was probably in fact offered such an opportunity slightly more frequently than once each week, but not as often as twice a week, and that the length of the periods was normally one hour but sometimes only one-half hour.[5]

■ This is not a class action, and I do not pass on the constitutional adequacy of the general policy of the defendants to permit adjustment center residents one hour of outdoor recreation each week. This case is limited to the particular facts of the plaintiff's case. He was sentenced to serve, and did serve, two one-year sentences in punitive segregation. The operation of the adjustment center is such that the plaintiff was forced to lead a monotonous day-to-day existence within his small cell. I conclude

that it is cruel and unusual, within the present meaning of the constitutional phrase, for prison officials to confine an inmate to extended disciplinary segregation without adequate opportunity to have outdoor recreation. I do not here determine how many weeks or months constitute extended confinement or how many minutes or hours of time outside are adequate for a given period of confinement. I do agree that the "duration of an inmate's confinement, while not itself a controlling factor in Eighth Amendment analysis, nonetheless helps to gauge the cumulative burden of the deprivations that the inmate has endured." *Johnson v. Anderson*, 370 F.Supp. 1373 (D.C.Del.1974). I am satisfied, even in the absence of expert testimony, that one year in the highly restrictive confinement of the adjustment center is a sufficiently long period to justify a requirement of some substantial opportunity for periodic outdoor recreation. The opportunity provided to the plaintiff was meager within the context of such a lengthy sentence. The schedule called for allowing the plaintiff some measure of relief from his otherwise relentless confinement only one out of every 168 hours. That was not enough, nor was the time which was actually offered to the plaintiff enough.

---

**3.** No purpose will be served by a discussion of the relevant cases which necessarily turn upon the particular set of circumstances involved. I am satisfied that the conclusion which I reach concerning the plaintiff's Eighth Amendment claim is in harmony with the reasoning of the most important cases. See, e. g., *Kirby v. Blackledge*, 530 F.2d 583 (4th Cir. 1976); *Sweet v. South Carolina Dept. of Corr.*, 529 F.2d 854 (4th Cir. 1975); *Sostre v. McGinnis*, 442 F.2d 178 (2nd Cir. 1971); *Spain v. Procunier*, 408 F.Supp. 534 (D.C.N.D.Cal.1976); *Jordan v. Arnold*, 408 F.Supp. 869 (D.C.M.D.Pa.1976); *Johnson v. Anderson*, 370 F.Supp. 1373 (D.C. Del.1974); *Krist v. Smith*, 309 F.Supp. 497 (D.C.S.D.Ga.1970), aff'd 439 F.2d 146 (5th Cir. 1971); *Rhem v. Malcolm*, 389 F.Supp. 964 (D.C.S.D.N.Y.1975), aff'd 527 F.2d 1041 (2nd Cir. 1975); *Craig v. Hocker*, 405 F.Supp. 656 (D.C.Nev.1975). But cf. *Pinkston v. Bensinger*, 359 F.Supp. 95 (D.C.N.D.Ill.1970).

**4.** By outdoor recreation I do not mean any athletic or exercise program, but simply the opportunity to be outside and in some tempo-

rary sense relieved from the intense physical captivity of the disciplinary confinement.

**5.** The adjustment center rules provide for one hour weekly of outdoor exercise. The plaintiff testified that during the early portion of his confinement he actually received an opportunity to one hour per week outdoors, but later he was fortunate to get one-half per week. A prison official testified that over-population of the adjustment center sometimes prevented a guarantee of one hour outdoors per week for every inmate, but that since inmates frequently refused the yard, those who wanted to usually could get out at least once each week. There was evidence that over a ten-month period the plaintiff was offered the yard on 65 occasions and that he refused nine times. The reasons for the refusals do not appear. There was conflict in the testimony concerning whether most of these opportunities were for one-half hour or one hour periods. The prison official testified that he believed most of the periods were for one hour each.

At trial considerable discussion developed over the relief to which the plaintiff might be entitled. I find no evidence whatever that the two officials sued by the plaintiff acted in bad faith in failing to ensure that the plaintiff received a greater opportunity for outside recreation. I therefore conclude that damages cannot be assessed. See *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). I also agree with the defendants that the prospect of the plaintiff's returning to his prior status is not so immediate that injunctive relief is appropriate. However, I do not think that the plaintiff's claim is moot. His prior institutional record and the frequent use of disciplinary segregation by the defendants warrant declaratory relief.

This conclusion is not altered by the evidence that a new adjustment center yard will soon be completed and that, if the plaintiff is again sentenced to the adjustment center, he may then have twice as many opportunities to be outdoors as before. The new yard may soon be available, but the extent to which the plaintiff will be protected from future unconstitutional treatment depends on several uncertainties, such as possible overcrowding at the adjustment center, inadequate staffing, and interference with the exercise schedule due to other adjustment center functions.

Nor do I pass on whether constitutional requirements will be satisfied by the construction of the proposed new yard facility and the establishment of a firm policy of offering two hours of weekly outdoor recreation to all adjustment center residents, including those confined for extended periods. It is doubtful that courts could agree on the precise length and frequency of outdoor recreation required by the Constitution for disciplinary terms of various lengths and circumstances. Wisdom therefore dictates that I do no more at this time than declare that the plaintiff's rights have been violated. Further resolution of the matter is best entrusted to the good faith and discretion of the prison officials in the first instance, and, if need be, to future litigation in the last.