No. 71–6789. SELLARS ET AL. *v.* BETO, CORRECTIONS DIRECTOR. C. A. 5th Cir. Motion of National Prison Project of the American Civil Liberties Union et al. for leave to file a brief as *amici curiae* granted. Certiorari denied.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur, dissenting.

I vote to hear this case because it raises substantial questions of law in the area of the Eighth and Fourteenth Amendments.

Petitioners are inmates of the Texas Department of Corrections (T. D. C.). They brought a class action under 42 U. S. C. § 1983, challenging the constitutionality of:

(1) a T. D. C. regulation barring all inmate assistance in preparation of legal work;

(2) the primitive conditions of the solitary confinement as administered by the T. D. C.

The District Court denied relief, *Novak* v. *Beto,* 320 F. Supp. 1206 (SD Tex. 1970).

On appeal, the United States Court of Appeals for the Fifth Circuit unanimously reversed as to the prohibition on prisoners' legal assistance, holding that the State had not met its burden of providing alternatives to assure access to the courts as required by *Johnson* v. *Avery,* 393 U. S. 483 (1969).

A divided court affirmed the constitutionality of the conditions of solitary confinement. *Novak* v. *Beto,* 453 F. 2d 661 (1971). A motion for a rehearing and rehearing *en banc* was denied March 8, 1972, six judges dissenting. *Novak* v. *Beto,* 456 F. 2d 1303.

If we are to believe the facts as stated by petitioners, and for purposes of review we must, a prisoner placed in solitary confinement in Texas will find himself in a shockingly primitive condition.

The cell is kept in complete darkness 24 hours a day. A barred iron gate backed up by a wooden door blocks all light and prevents any human contact with those in the hall.[1] Within this black interior is a combination toilet-water basin and a steel bunk. The bunk has no mattress although the prisoner is given a blanket. The cell is otherwise bare. The inmate is fed on a bread and water diet with one full meal every 72 hours.[2] He is clothed only by a cloth gown. In addition to those conditions, which were considered inhumane at the time of Charles Dickens, the prisoner has no opportunity to exercise; he is not permitted correspondence with family, friends, or lawyer; no visits are allowed and he is allowed no reading material of any kind.

The prisoner is not seen by a psychologist, psychiatrist, or counselor before, during, or after confinement to solitary. And all deprivations involved in solitary confinement apply uniformly regardless of the individual's background or criminal record or offense for which he is being punished.

A prisoner can be kept so confined for 15 days and re-confined after a two-day respite. Such practices as above described exist in all of Texas' 14 correctional facilities.

---

[1] On July 10, 1972, the T. D. C. revised its regulations on the lighting and diet.

"50.92322 *Lighting*.

"The solid doors of the solitary cells will be left open. If an inmate becomes noisy and creates a disturbance the door will be closed. On some units the open doors create a security problem, and it is not practical to utilize this procedure. If this occurs, artificial lighting will be provided during the normal daylight hours."

[2] "50.9233 *Diet*.

"50.92331 Inmates in solitary [confinement] are to be fed twice a day a hot meal consisting of vegetables from the regular serving line, and are to be given unlimited drinking water."

The petitioners do not question the right of the prison to isolate inmates for cause but do challenge these practices.

*Weems* v. *United States,* 217 U. S. 349 (1910), was a landmark in the definition of the Cruel and Unusual Punishment Clause. *Robinson* v. *California* made the Eighth Amendment binding on the States through the Fourteenth Amendment. 370 U. S. 660 (1962). We said that the "dignity of man" was the overriding value preserved by that clause. *Trop* v. *Dulles,* 356 U. S. 86, 100 (1958).

The fitness of punishment is to be judged by applying evolving standards, for the clause "is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice." 217 U. S., at 378. What those standards are is now tendered. The extent to which the prohibition against cruel and unusual punishment will apply in prison must also be determined. In *Haines* v. *Kerner,* 404 U. S. 519 (1972), we held that a bare allegation of onerous penal conditions is sufficient to require a hearing.

Lower courts have often dealt with the issue and have reached divergent results [3] without guidance from us. See *Morales* v. *Schmidt,* 340 F. Supp. 544 (1972).

---

[3] Some lower courts have held that some conditions of imprisonment constitute cruel and unusual punishment. See *Wright* v. *McMann,* 387 F. 2d 519 (CA2 1967), on remand, 321 F. Supp. 127 (NDNY 1970), affirmed in part and reversed in part, 460 F. 2d 126 (CA2 1972); *Hancock* v. *Avery,* 301 F. Supp. 786 (MD Tenn. 1969); *Holt* v. *Sarver,* 300 F. Supp. 825 (ED Ark. 1969); *Barnes* v. *Hocker,* No. R 2071 (Nev. Sept. 5, 1969); *Jordan* v. *Fitzharris,* 257 F. Supp. 674 (ND Cal. 1966). *Contra: Sostre* v. *McGinnis,* 442 F. 2d 178, 192 (CA2 1971); *Courtney* v. *Bishop,* 409 F. 2d 1185 (CA8 1969); *Ford* v. *Board of Managers,* 407 F. 2d 937 (CA3 1969); *Krist* v. *Smith,* 309 F. Supp. 497 (SD Ga. 1970), aff'd, 439 F. 2d 146 (CA5 1971).

Denial of the petition here in my view constitutes a travesty of justice. As Judge Tuttle stated in his dissent:

> "I do not hesitate to assert the proposition that the only way the law has progressed from the days of the rack, the screw and the wheel is the development of moral concepts, or, as stated by the Supreme Court in Trop v. Dulles, the application of 'evolving standards of decency.'" *Novak* v. *Beto,* 453 F. 2d, at 672.[4]

I would grant this petition and put the case down for argument.

---

[4] As stated by Judge Kaufman in *Wright* v. *McMann,* 387 F. 2d, at 526:

"We are of the view that civilized standards of humane decency simply do not permit a man for a substantial period of time to be denuded and exposed to the bitter cold of winter in northern New York State and to be deprived of the basic elements of hygiene such as soap and toilet paper. The subhuman conditions alleged by Wright to exist in the 'strip cell' at Dannemora could only serve to destroy completely the spirit and undermine the sanity of the prisoner. The Eighth Amendment forbids treatment so foul, so inhuman and so violative of basic concepts of decency."