(No. 44612.—

*In re* Petition of DOUGLAS OWEN *et al.*—(The People of the State of Illinois, Appellant, v. Douglas Owen *et al.*, Appellees.)

*Opinion filed April 2, 1973.*

WILLIAM J. SCOTT, Attorney General, of Springfield (JAMES B. ZAGEL and E. JAMES GILDEA, Assistant Attorneys General, of counsel), for the People.

PATRICK T. MURPHY, JOHN D. SHULLENBERGER and JAMES M. De ZELAR, all of Chicago, for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal from an order of the juvenile division of the circuit court of Cook County directing the Department of Corrections of the State of Illinois to establish guidelines for the administration of certain procedures affecting wards of that court who are confined to the Illinois Industrial School for Boys at Sheridan (Sheridan). The order, in addition to directing the establishment of guidelines, as pointed out later in this opinion, is quite specific as to what those guidelines should be.

The petitioners, Owen, Stewart, Tate and Burton, were minors in the custody of the assistant director of the Department of Corrections pursuant to an order of the juvenile division of the circuit court of Cook County entered under the authority of the Juvenile Court Act. (Ill. Rev. Stat. 1969, ch. 37, par. 701—1 et seq.) Each had been adjudged delinquent by that court.

Each of the petitioners had filed lengthy and detailed

petitions seeking varied relief. The petitions which were consolidated and upon which the hearing was ultimately conducted were filed on behalf of the petitioners and the class they purport to represent. The petitions alleged that the minors confined at Sheridan were subjected to cruel and unusual punishment and denied due process of law in that they were kept in solitary confinement for lengthy periods of time and were given injections of tranquilizing drugs. The petition prayed that the assistant director of the Department of Corrections be ordered to report regarding his care and treatment of the petitioners and requested the court to enter an order upon the Department of Corrections compelling specific treatment of all wards of that court committed to its care. The order directing the assistant director to file his report was entered. Following the filing of the written report a hearing was conducted.

Following the hearing the court found that injections of a tranquilizing drug, thorazine, were forcibly administered to the residents of the school as a behavior control device; that there is no evidence that the use of thorazine was part of any program of psychotherapy; that solitary confinement of an inmate, referred to as "confined to room," was used as a behavior control device; and that the school has no educational or vocational training programs especially adapted to slow learners. The court also concluded that it had jurisdiction over both the subject matter and the persons here involved under the Juvenile Court Act.

On the basis of the above findings and conclusions, the court entered an order enjoining the continuation of practices then in effect regarding the disciplinary use of solitary confinement and tranquilizing drugs. It ordered the promulgation of regulations regarding the use of these devices in disciplining or treating wards of the circuit court of Cook County. The court specifically ordered that no

intramuscular injection of thorazine or other tranquilizer be given to the wards of the court at Sheridan except as part of a treatment for medical or emotional disorder and then only pursuant to written rules and regulations containing guidelines or safeguards for the use of the drugs. The court stated that the guidelines shall, among other things, include the following:

"a. A prohibition against the administration of such drugs unless there has been a complete and thorough attempt to induce the ward to control his behavior or actions without the administration of such drug and no such drug may be administered intramuscularly until a thorough attempt has been made to induce the ward to accept administration of the drug orally and until it appears that the ward absolutely will not receive such drug in any way other than intramuscularly.

b. A requirement that whenever such tranquilizing drugs are administered to a ward intramuscularly for a period exceeding 24 hours, a full and complete report shall be made to the ward's Guardian Ad Litem indicating what drug was or is being administered, when and how much and an explanation as to the reason for administering the drugs and what other actions were taken to solve the problems giving rise to the administration of the drugs.

c. A requirement that whenever the drug thorazine or any similar 'Major tranquilizer' is administered to a ward of this Court he shall be examined by a physician within 24 hours of the initial administration and at least once every 24 hours thereafter as long as the ward continues to receive such a tranquilizing drug.

d. A requirement that whenever thorazine or any similar 'Major tranquilizer' is administered, the ward shall be visited by his counselor and counseled within eight hours after each injection.

e. A prohibition against the administration of the drug thorazine or any similar 'Major tranquilizer' when to do so would in any way impair the physical well being of any said ward."

The order further required the Department of Corrections to establish guidelines for the use of disciplinary

proceedings which might be taken against the wards of the court, and stated that the guidelines shall include the following:

"a. A requirement that the Department of Corrections shall formulate rules and regulations relating to the conduct of a ward who is admitted to its facilities at Sheridan. These rules shall set forth what disciplinary actions, if any, will be taken for violation of said rules and regulations. They shall be formulated in clear and concise language understandable to any ward, they shall be reduced to writing and shall be distributed to each ward upon his admission to the institution.

b. A requirement that before taking disciplinary action, when such action can result in solitary confinement or confinement to room, the alleged violation of rules and regulations shall be reduced to writing and a copy of same shall be presented to the ward so accused.

c. A requirement that a committee on disciplinary action shall conduct a hearing on the alleged violation of rules and regulations under paragraph 'b' above and the ward so accused shall have the right to be present and have the opportunity to speak on his own behalf. Upon conclusion of the hearing the committee shall reduce the facts presented and the conclusions reached to writing and place the same in the ward's record.

d. A requirement that in the event the above described hearing results in a conclusion that the ward has violated the rules and regulations of the institution and also results in committing the ward to solitary confinement or confinement to room a copy of said committee's conclusion shall be given to the ward, his parents, and his Guardian Ad Litem.

e. A requirement that in the event a ward of this Court continues to be confined to room for a period in excess of five consecutive days, he shall be examined by a psychiatrist to determine what good, if any, or adverse effects, if any, will result from continued confinement. The said psychiatrist shall determine whether the ward shall continue to be confined to room and shall prescribe such treatment and recommend such counseling as he feels is appropriate and in the best interest of the said ward."

The order is similar in detail to the order entered by the court in *Sostre v. Rockefeller (S.D.N.Y. 1970), 312 F.*

*Supp. 863.* Indeed the plaintiffs have cited that case in this court in support of the trial court's order.

We note however that on appeal under the title of *Sostre v. McGinnis (2d cir. 1971), 442 F.2d 178,* the order of the trial court in that case was reversed insofar as it provided for the detailed regulation of prison administration. The court stated: "Federal courts have been reluctant to intrude themselves into the complex and delicate problems of prison administration." (442 F.2d at 189.) The courts have traditionally accorded to correctional authorities wide discretion in matters of internal prison administration. Reasonable action within the scope of this discretion does not violate a prisoner's constitutional rights. It is well established, however, that inmates do not lose all their constitutional rights. *Smith v. Schneckloth (9th cir. 1969), 414 F.2d 680.*

The trial court found, and the petitioners here contend, that the authority to enter the detailed order in our case is found in the Juvenile Court Act. We recognize that section 5—8 of that Act (Ill. Rev. Stat. 1969, ch. 37, par. 705—8) confers upon the court certain powers of supervision with regard to the wards of the court. However, we are not aware of any case wherein the authority granted by the Act has been construed to authorize the court to establish detailed procedures for the care and discipline of its wards while committed to an institution under the supervision of the Department of Corrections. The order of the court in this case applies only to the wards of the juvenile division of the circuit court of Cook County. If the juvenile division of the court in each county in Illinois were to undertake to prescribe specific procedures to be used in treating and disciplining its wards, the divergence of thought among the several courts as to what constitutes correct treatment and discipline of its wards could make it impossible to operate an institution. For this reason alone, the juvenile division of the circuit court, under the authority of section 5—8 of the Juvenile Court Act, should not attempt to establish

treatment and disciplinary procedures for its wards which have been committed to the custody of the Department of Corrections.

We need not consider what may have been the proper procedures for relieving the alleged abuses or in what manner and to what extent judicial intervention should have been used for that purpose. Since the entry of the order under consideration the General Assembly has adopted the Unified Code of Corrections, effective January 1, 1973 (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1001—1—1 *et seq.*). Also, under the authority of the Code, the Department of Corrections has adopted regulations which cover in detail the areas encompassed by the court order involved in this appeal. (Department of Corrections Administrative Regulations Juvenile Division.) The regulations were promulgated since the entry of the order before us. We believe it would be appropriate in this case to withhold judicial intervention in the administration of the affairs of this institution until the petitioners have had the opportunity to seek redress of their grievances through the procedures provided by the Code and the Regulations. See *People ex rel. Willis v. Department of Corrections, 51 Ill. 2d 382.*

For the above reasons the judgment of the circuit court of Cook County is reversed.

The conclusion we have reached makes it unnecessary to consider whether this case may be maintained as a class action.

*Judgment reversed.*