William F. HOUCHIN, Plaintiff,

v.

Charles J. HOLMES, Individually and in his official capacity as Commissioner of the Department of Corrections of the Commonwealth of Kentucky, et al.

Civ. No. 74–1.

United States District Court,
E. D. Kentucky,
Frankfort Division.

Dec. 27, 1974.

William F. Houchin pro se.

Ed W. Hancock, Atty. Gen. by Peter C. Macdonald, Frankfort, Ky., for defendants.

## MEMORANDUM

SWINFORD, District Judge.

This civil rights action commenced by an inmate in the Kentucky State Penitentiary alleges that the plaintiff is confined in administrative segregation without Due Process of Law and that the conditions of his incarceration constitute cruel and unusual punishment. An order entered October 15, 1974, directed the Kentucky correctional officials to accord hearings addressing the plaintiff's continuation in administrative segregation and the conditions of his confinement relative to the allegations of the complaint. The defendants have filed findings of fact resulting from the inquiries and the record is before the court for decision.

The hearing investigating the living conditions in Cell House Number 3 afforded Houchin an ample opportunity to demonstrate the allegations of cruel and unusual punishment. Although somewhat primitive in the past, the plaintiff voiced no complaint regarding the current institutional environment. Further, the court is unable to conclude that the conditions during the period mentioned in the complaint constituted cruel and unusual punishment. First, the plaintiff was not sub-

jected to "solitary confinement" but was imprisoned in a maximum security wing reserved for troublesome inmates; the area includes rows of cells which do not hamper communication among the prisoners. Further, several of the infringements persisted for a maximum period of two weeks; thus, Houchin and his witnesses admitted that the inadequate supply of clothing and cleaning materials was alleviated shortly after his arrival at the penitentiary. Regular laundry service was available and the occupants provided ample detergents for maintaining cell cleanliness. The asserted frequency of rodents and insects was weakened by testimony indicating periodic pesticide spraying and contradictory reports regarding the number and type of vermin involved. While the dust and filth undoubtedly accumulated, the plaintiff admitted that the cells were as clean as their occupants chose to keep them.

The most profound disagreement addressed the winter temperature in the cellhouse. Houchin maintained that clothes and towels stuffed into broken windows did not lessen the intrusion of cold air, while testifying guards recalled that the block was "comfortable." Others opined that the heating problem was primarily attributable to the uneven distribution of warmed air. Whatever the temperature in the cellhouse, it was admitted that the guards wore no coats and that a new air conditioning system had been installed since the period complained of. See United States ex rel. Tyrrell v. Speaker, 3d Cir., 471 F.2d 1197, 1202 (1973); United States ex rel. Pope v. Hendricks, E.D.Pa., 326 F. Supp. 699, 700 (1971).

Houchin's complaints of inadequate medical attention reveal primarily a diagnostic disagreement. Shields v. Kunkle, 9th Cir., 442 F.2d 409 (1971); Santiago v. Sowers, M.D.La., 347 F. Supp. 1055, 1057 (1972); see also Fitzke v. Shappell, 6th Cir., 468 F.2d 1072 (1972). The plaintiff's reports of back pain resulted in X-rays and a medical examination shortly after his arrival at the penitentiary. Although full time professional aid was apparently unavailable, the prison was served by weekly or biweekly visits by a physician, constant attendance of inmate-nurses, and hospitalization in the event of an emergency. The plaintiff testified that the present implementation of a staff physician amply satisfies medical needs.

Other complaints represent unavoidable and nonactionable consequences of institutional life. Burns v. Swenson, 8th Cir., 430 F.2d 771 (1970). While temperature malfunctions hampered the operation of showers, the inmates were permitted periodic sponge baths. Food was occasionally cold but testimony revealed serious efforts to preserve heat through service in covered stainless steel buckets, see Annot., 51 A.L.R.3d 111, Section 16, and the 60 watt light bulbs placed in each cell supplied adequate illumination. The maximum security confinement limited the opportunity for recreation, but inmates typically exercised in their cells and on trips outside the building. United States ex rel. Tyrrell v. Speaker, supra, 471 F. Supp. at 1202; United States ex rel. Walker v. Mancusi, 2d Cir., 467 F.2d 51 (1972); Smith v. Swenson, W.D.Mo., 333 F.Supp. 1258 (1971); Novak v. Beto, S.D.Tex., 320 F.Supp. 1206, 1211–1212 (1970), modified on other grounds 5th Cir., 453 F.2d 661 (1971), cert. denied 409 U.S. 968, 93 S.Ct. 279, 34 L.Ed.2d 233 (1972). The asserted denial of religious services was negated by testimony of Houchin and the prison chaplin revealing numerous personal visits. See Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Although the maximum security confinement perhaps limited the availability of a law library, the plaintiff's petitions and complaints before this court indicates ready availability of necessary legal materials.

The hearing transcript does not disclose deprivations suggesting cruel and unusual punishment:

"The scope of . . . review is very limited under the cruel and un-

usual punishment clause. . . . (C)ourts have traditionally confined their review of prison regulations to such standards as 'barbarous' and 'shocking to the conscience'." Novak v. Beto, 453 F.2d at 670–671.

See Jones v. Wittenberg, N.D.Ohio, 323 F.Supp. 93, 99 (1971), supplemented 330 F.Supp. 707 (1971), aff'd 6th Cir., 456 F.2d 854 (1972). Thus, the court in Krist v. Smith, 5th Cir., 439 F.2d 146, 147 (1971), excused an inadequate "prison menu; censorship . . .; lack of medical care; the infrequency of shower facilities; lack of exercise; and lack of access to legal materials, library, and religious services." See Breece v. Swenson, W.D.Mo., 332 F.Supp. 837, 843 (1971). The hearing portrayed merely the discomforts naturally attendant to a confined environment. More importantly, the complaining inmate conceded that the conditions attacked in the complaint had been largely rectified by the time of the hearing.

■ The inquiry addressing the propriety of continuing the plaintiff's segregation from the general prison population fully satisfied the requirements of Wolff, Warden v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (June 26, 1974). Houchin admitted receipt of timely notice of the hearing and was allowed inmate counsel to enable a full revelation of .the reasons for confinement. Five witnesses called by the plaintiff stated in considerable detail their impression of his social stability, and the adjustment committee prepared detailed findings of fact supporting continuation of segregated confinement.

■ The procedural complaints voiced by Houchin during the hearing were legitimately dismissed by the board. The request for a retained attorney or lay assistance from another penitentiary was properly denied; the Wolff decision explicitly rejected the necessity of retained or appointed counsel and recognized the importance of penal security. Wolff, Warden v. McDonnell, 418 U.S. at 566–570, 94 S.Ct. at 2978–2981, 2982. The limitation of the right to call witnesses similarly reflected a correct analysis of the Court's concern for relevance and institutional safety. 418 U.S. at 566–569, 94 S.Ct. at 2978–2981.

■ The court is also in full agreement with the panel's conclusions. The hearing revealed that Houchin has been incarcerated since 1960 on Kentucky and Missouri murder convictions as well as sentences for holding hostages, voluntary manslaughter, and malicious cutting and wounding with intent to kill. The inmate's difficulty in functioning with others was manifest by the record of 43 institutional charges placed against him in Kentucky and Missouri; while many of the offenses were trivial, others involved attempted homicide by stabbing a fellow inmate eight times, threatening guards and prisoners, intoxication and possessing a lethal weapon. Houchin was returned to the general population on several occasions, but returned in each instance to segregation because of renewed disturbances. Although convictions and charges of disruption are of course not judicially cognizable in the context of this action, the plaintiff's continued anti-social behavior amply justified the board conclusions that the safety and rehabilitation of all concerned demanded continued maximum security. See United States ex rel. Walker v. Mancusi, supra, 467 F.2d at 53; Burns v. Swenson, supra, 430 F.2d at 779–780.

An order will be entered dismissing the complaint.