(No. 54768.—

PAUL WILLIAM TEDDER, Appellee and Cross-Appellant, v. JAMES FAIRMAN, Warden, *et al.*, Appellants and Cross-Appellees.—THOMAS BASS, Appellee and Cross-Appellant, v. GAYLE M. FRANZEN, Director of Corrections, *et al.*, Appellants and Cross-Appellees.

*Opinion filed April 16, 1982.—Rehearing denied May 27, 1982.*

UNDERWOOD and WARD, JJ., and RYAN, C.J., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellants and cross-appellees.

Gary G. Johnson, of Normal, and Bruce P. Bower and John R. Porter, Jr., of Bloomington, for appellee and cross-appellant Paul William Tedder.

Robert W. Gettleman and Arthur Don, of Chicago (D'Ancona, Pflaum, Wyatt & Riskind, of counsel), for appellee and cross-appellant Thomas Bass.

Malvina Nathanson, of New York, New York, for *amicus curiae* National Legal Aid and Defender Association.

JUSTICE CLARK delivered the opinion of the court:

This consolidated case involves two petitions brought by inmates of the Pontiac Correctional Center against various officials and agents of the Department of Corrections. Paul William Tedder and Thomas Bass appealed from judgments in the circuit court of Livingston County entered on December 26, 1979, dismissing each of the petitioners' complaints.

On August 17, 1979, Paul William Tedder filed a request as a *pro se* petition for a writ of *mandamus* or *habeas corpus* in the circuit court of Livingston County. Tedder alleged that he was deprived of needed medical assistance. On August 20, 1979, the circuit court entered an order appointing the public defender to represent Tedder. Defendants filed a motion to dismiss the petition for *habeas corpus* and the petition for *mandamus*. Tedder requested an extension of time to file a response to the motion to dismiss. On September 27, 1979, the circuit court informed Tedder that Mr. Blakeman, assistant public defender, had been appointed to represent him. On October 4, 1979, the circuit court granted the defendants' motion to dismiss the petition for *habeas corpus* and granted defendants' motion for a more definite statement of petitioner's *mandamus* claim. Tedder was given 10 days in which to amend the petition.

Bass, in his *pro se* petition of October 25, 1979, filed in the circuit court, asserted that he had filed a grievance

with the Inquiry Review Board prior to petitioning the court. Bass further states that the Inquiry Review Board on September 21, 1979, determined the grievance to be without merit. Tedder in his *pro se* petition asserts that he has done everything possible at the Pontiac Correctional Center to get the medical help he seeks. Tedder does not say whether doing everything possible included asking for an administrative review of the denial of medical assistance. While the Attorney General did not claim, in moving to dismiss, that the petitioner failed to file a grievance with the Inquiry Review Board, a request for internal review within the correctional institution must be made before a circuit court considers the petitioner's complaint. (*People ex rel. Willis v. Department of Corrections* (1972), 51 Ill. 2d 382; *In re Owen* (1973), 54 Ill. 2d 104, 110.) On remand the circuit court should make a preliminary finding as to whether any petition on behalf of Tedder was presented to the Inquiry Review Board. If the petitioner has not sought review of his complaint at Pontiac, then the petition filed in the circuit court of Livingston County is premature, and dismissal without prejudice would be appropriate until the petitioner takes such action.

On October 25, 1979, the circuit judge wrote to Tedder informing him of the status of various cases he had filed in the circuit court. The assistant public defender also wrote to Tedder on October 18, 1979, to inform him of the status of his case. On November 28, 1979, the circuit court granted an extension of 14 days to amend his petition for *mandamus*. No amended pleadings were filed by the petitioner or his court appointed counsel.

On December 18, 1979, Tedder filed a petition for rehearing or notice of appeal on the dismissal of the *mandamus* portion of the original petition. The final order dismissing the petition for *mandamus* was entered December 26, 1979. According to the supporting affidavit of the December 18 petition for rehearing, the appointed

public defender had refused to travel to Pontiac to discuss the case. Tedder maintained that his counsel had been ineffective and he had been unable to do his research or consult with an inmate lawyer.

Thomas Bass filed a *pro se* petition for a writ of *mandamus* in the circuit court of Livingston County on October 25, 1979. Bass sought a transfer because he asserted that he feared for his physical safety. On October 25, 1979, Assistant Public Defender Blakeman was also appointed to represent Bass. The defendants filed a motion to dismiss this petition for *mandamus*. On November 28, 1979, the petition was dismissed and Bass was given 14 days to amend his pleadings. No amended pleadings were filed, and the petition was dismissed on December 26, 1979. Bass was informed of this dismissal by letter on December 27, 1979. On January 11, 1980, Bass filed a notice of appeal.

The trial court appointed the State Appellate Defender to represent each of the prisoners on appeal. The Appellate Defender moved to withdraw as counsel on the basis that his duties do not include representation of indigent prisoners, except in criminal appeals. The appellate court ordered the motion taken with the case and directed the Appellate Defender to file briefs on behalf of the petitioners and address the issues of the Appellate Defender's duty to represent prisoners in actions of this nature and the rights of prisoners to counsel on appeal. The Appellate Defender argued that indigent prisoners had no constitutional right to appointed counsel in civil cases, and the State agreed.

The appellate court allowed the Appellate Defender's motion to withdraw, held that indigent prisoners bringing suits of this nature have no right to appointed counsel, either at trial or on appeal, reversed the trial court's dismissal of the claimants' petitions, and remanded to allow the complaints to be amended. (93 Ill. App. 3d 948.) The

appellate court opinion provided that if plaintiffs show they have been deprived of the right of access to the courts, any appointed counsel would have to come from the private bar. The opinion further provided that any ruling requiring appointment of counsel as a constitutional right should only come from the State's highest court. On April 6, 1981, the appellate court, on its own motion, issued a certificate of importance in this case to this court.

A prisoner may be subject to certain restrictions on and limitations of many privileges and rights. (*Price v. Johnston* (1948), 334 U.S. 266, 285, 92 L. Ed. 1356, 1369, 68 S. Ct. 1049, 1060; *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963.) There are occasions when constitutional rights can be abridged provided it is necessary in order that the Department of Corrections may pursue legitimate and reasonable policies in maintaining institutional security and preserving internal order in a State institution. *Pell v. Procunier* (1974), 417 U.S. 817, 822, 41 L. Ed. 2d 495, 501, 94 S. Ct. 2800, 2804.

Nonetheless, a prisoner does not forfeit fundamental constitutional protections as the result of his conviction and custodial status. Any incarcerated man or woman retains some important basic rights which cannot be stripped away. *Jones v. North Carolina Prisoners' Labor Union, Inc.* (1977), 443 U.S. 119, 129, 53 L. Ed. 2d 629, 641, 97 S. Ct. 2532, 2539-40; *Meachum v. Fano* (1976), 427 U.S. 215, 49 L. Ed. 2d 451, 96 S. Ct. 2532; *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963; *Pell v. Procunier* (1974), 417 U.S. 817, 822, 41 L. Ed. 2d 495, 501, 94 S. Ct. 2800, 2804; *Bell v. Wolfish* (1979), 441 U.S. 520, 545-46, 60 L. Ed. 2d 447, 472-73, 99 S. Ct. 1861, 1877.

One guarantee which has become well established is a prisoner's constitutional right of access to the courts. (*Bounds v. Smith* (1977), 430 U.S. 817, 821-23, 52 L. Ed. 2d 72, 78-79, 97 S. Ct. 1491, 1494-95.) The right is

founded on the due process clause (*Wolff v. McDonnell* (1974), 418 U.S. 539, 579, 41 L. Ed. 2d 935, 964, 94 S. Ct. 2963, 2986) and was first addressed by the Supreme Court in *Ex parte Hull* (1941), 312 U.S. 546, 85 L. Ed. 1034, 61 S. Ct. 640.

In *Ex parte Hull* the Supreme Court took the first step in ensuring that prisoners, in spite of their incarcerated status, had the ability to present their claims and grievances in the courts. The court struck down a prison regulation which required inmates to obtain approval from a corrections official prior to filing a *habeas corpus* petition and concluded that a State could not impede prisoners from petitioning the courts to review the legality of the individual's incarceration. 312 U.S. 546, 85 L. Ed. 1034, 61 S. Ct. 640.

A prisoner's right to petition the court was further delineated in *Johnson v. Avery* (1969), 393 U.S. 483, 21 L. Ed. 2d 718, 89 S. Ct. 747, where the Supreme Court ruled that prison officials could not prohibit jailhouse lawyers from helping other inmates draw up *habeas corpus* petitions. The court recognized that "[j]ails and penitentiaries include among their inmates a high percentage of persons who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited" (393 U.S. 483, 487, 21 L. Ed. 2d 718, 722, 89 S. Ct. 747, 750), and noted that prisoners who could not afford counsel and who were so illiterate or so poorly educated that they were unable to prepare a petition were totally barred from access to *habeas corpus* by the regulation. The court held that "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners." 393 U.S. 483, 490, 21 L. Ed. 2d 718, 724, 89 S. Ct. 747, 751.

The next case upholding the right of access to the courts was *Younger v. Gilmore* (1971), 404 U.S. 15, 30 L. Ed. 2d 142, 92 S. Ct. 250 (*per curiam*), where inmates challenged a California prison regulation which excluded State and Federal reporters and annotated codes from the prison library. The district court found that the prison authorities had a duty to devise "another system whereby indigent prisoners are given adequate means of obtaining the legal expertise necessary." (*Gilmore v. Lynch* (N.D. Cal. 1970), 319 F. Supp. 105, 112.) *Gilmore* indicated that the State's obligation required more than not impeding prisoners' access to the courts, and in fact included an affirmative burden on the part of the State that access be provided. Potuto, *The Right of Prisoner Access: Does Bounds Have Bounds?*, 53 Ind. L.J. 207, 208 (1977).

The decision in *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963, extended the protection afforded *habeas* petitions in *Avery* to prisoners bringing civil rights actions (under 42 U.S.C. sec. 1983 (1976)). The court held that prisoners bringing such actions also have a right to some form of legal assistance to ensure that their access to the courts is meaningful (418 U.S. 539, 579-80, 41 L. Ed. 2d 935, 964, 94 S. Ct. 2963, 2986), stating that the due process clause "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights" (418 U.S. 539, 579, 41 L. Ed. 2d 935, 964, 94 S. Ct. 2963, 2986).

Finally in *Bounds v. Smith* (1977), 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491, the court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." (430 U.S. 817, 828, 52 L. Ed. 2d 72, 83, 97 S. Ct. 1491, 1498.) The mandate in *Bounds*

does not limit the methods by which the State can fulfill its obligation. " '[M]eaningful access' to the courts is the touchstone." (430 U.S. 817, 823, 52 L. Ed. 2d 72, 80, 97 S. Ct. 1491, 1495, quoting *Ross v. Moffitt* (1974), 417 U.S. 600, 611, 41 L. Ed. 2d 341, 351, 94 S. Ct. 2437, 2444.) An adequate law library is one of the constitutionally acceptable methods. Alternatives include paralegal help, law student clinical programs, or staff attorneys. 430 U.S. 817, 831, 52 L. Ed. 2d 72, 84, 97 S. Ct. 1491, 1499-1500.

While the appointment of counsel would undoubtedly measure up to the *Bounds* requirements, appointment of counsel is not the sole means of ensuring meaningful access. No court has read *Bounds* to require appointed counsel in a civil suit. We cannot find sufficient support in any of the United States Supreme Court holdings to say that an indigent prisoner has a constitutional right to appointed counsel in a civil suit either at trial or on appeal. The constitutional mandate is for "meaningful access." In the case before us, the issue was properly framed in terms of the inmates' access to the courts for the first time in the appellate court. There is not adequate evidence in the record concerning the procedures in effect at Pontiac to assist inmates in filing their claims. We are not therefore capable of reviewing whether Tedder's or Bass' constitutional guarantee of access to the courts has been met. The appendix to the defendant's brief setting forth certain administrative regulations concerning library services does not provide sufficient information.

It is not possible therefore to evaluate the State plan at Pontiac as a whole. We remand to the circuit court for an evidentiary hearing to consider what means the Department of Corrections made available to Tedder and Bass for their petitioning of the court to present their claims.

This evidentiary hearing, as far as Tedder is concerned, is necessary, provided that there is a preliminary

showing by Tedder that review of his grievance was sought at Pontiac before any action was taken in the circuit court.

The State carries the burden of demonstrating that its legal-assistance programs are adequate. (*Novak v. Beto* (5th Cir. 1971), 453 F.2d 661, 664, *cert. denied* (1972), 409 U.S. 968, 34 L. Ed. 2d 233, 93 S. Ct. 279.) While we recognize that jailhouse lawyering creates a real potential of a few writ writers practicing favoritism upon ignorant members of the prison population (*Battle v. Anderson* (10th Cir. 1980), 614 F.2d 251, 255; *Henderson v. Ricketts* (D. Colo. 1980), 499 F. Supp. 1066), we emphasize the need to establish some avenue of communication for *pro se* prisoners who can barely perceive the legal issues and are hard pressed to articulate them. For inmates who do not possess the intellectual abilities to permit reasonable comprehension of their legal claims, some provision must be made to allow communications with someone who is able to translate their complaints into cognizable petitions. *Stevenson v. Reed* (W.D. Miss. 1975), 391 F. Supp. 1375. See *Wetmore v. Fields* (W.D. Wis. 1978), 458 F. Supp. 1131, 1142; *Cruz v. Hauck* (5th Cir. 1980), 627 F.2d 710, 720.

While the trial court is under no duty to appoint an assistant public defender to represent the plaintiff in these *pro se* actions, the trial court did not abuse its discretion in doing so. The pertinent part of the statute provides:

> "The Public Defender, as directed by the court, shall act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel." (Ill. Rev. Stat. 1979, ch. 34, par. 5604.)

Public defenders are expressly authorized by the statute to represent indigent persons "held in custody." The public defender acts as a legal representative "as directed by

the court." Other jurisdictions specifically authorize representation by a public defender for indigent prisoners in actions attacking conditions of inmates' confinement (*e.g.*, Wis. Stat. Ann. sec. 977.05(4) (West Supp. 1981-82); Ind. Code Ann. sec. 33—1—7—2 (Burns 1975)). There is no legislative mandate that a public defender be appointed to represent an indigent prisoner in a case alleging deprivation of a prisoner's civil rights in Illinois. However, the statutory language does not preclude such an appointment.

We understand the public defender's reluctance to go forward in this action in the uncharted sea of civil litigation for prisoners, particularly in view of the heavy criminal caseload that each office carries. However, once a circuit court, in its discretion, has determined that appointment of the public defender is appropriate to represent an indigent prisoner, limited to a grievance relating to the conditions of his confinement, then that assistant public defender is expected to exercise due diligence in proceeding with the assigned case. Should the trial court on remand determine appointment of counsel to be in order, that counsel could be provided for by the public defender's office.

Whatever the findings of the circuit court on remand in regard to "meaningful access" (*Bounds v. Smith* (1977), 430 U.S. 817, 823, 52 L. Ed. 2d 72, 80, 97 S. Ct. 1491, 1498) for these *pro se* prisoners, we hold that the complaints should not have been dismissed. Appointed counsel failed to amend the pleading in the face of the circuit court statements that both petitions were inadequate. We refrain from rendering a judgment on the merits of the unamended petitions for the writs of *mandamus*. Because the assigned assistant public defender failed to amend each of the petitioner's pleadings the plaintiffs will be allowed to amend their complaints to attempt to state a cause of action.

The cause is remanded to the circuit court of Livingston County for proceedings consistent with this opinion.

*Appellate court affirmed in part
and reversed in part; cause
remanded, with directions.*

JUSTICE UNDERWOOD, dissenting:

I agree with the majority's conclusion that an indigent prisoner does not have a constitutional right to the appointment of counsel in civil cases. I cannot agree, however, with the court's expansive interpretation of the statute delineating the duties of the public defender. By allowing trial courts discretion to appoint counsel to prosecute civil matters for indigent prisoners, the court has succumbed to the ever-present temptation to substitute its concept of desirable legislation in place of the objective interpretation of the legislature's intent and the constitutionality of its action, which should be a court's only concern.

The statute before the court for interpretation provides:

"The Public Defender, as directed by the court, shall act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel." (Ill. Rev. Stat. 1979, ch. 34, par. 5604.)

As recognized by the majority, the legislature clearly has not mandated appointment of a public defender for indigent persons in civil cases under the statute. Moreover, a careful reading of the statute in light of our rules of statutory interpretation fails to reveal any permissible basis for allowing courts to appoint public defenders in civil cases. In *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, this court recently reiterated that " '[i]t is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect.' " (72 Ill. 2d 189, 194.) "In ascertaining this intent,

the entire statute must be considered (*People ex rel. Morrison v. Sielaff*, 58 Ill. 2d 91, 93), and also 'the evil to be remedied and the object to be attained' (*People ex rel. Simpson v. Funkhouser*, 385 Ill. 396, 403)." *People v. Bratcher* (1976), 63 Ill. 2d 534, 543; see also *Droste v. Kerner* (1966), 34 Ill. 2d 495, 503; *People ex rel. Pauling v. Misevic* (1964), 32 Ill. 2d 11, *cert. denied* (1965), 380 U.S. 963, 14 L. Ed. 2d 154, 85 S. Ct. 1107; *Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill. 2d 489; *People ex rel. Barrett v. Anderson* (1947), 398 Ill. 480, 485.

The language of the statute restricts the public defender to representing "persons who are held in custody or who are charged with the commission of any criminal offense." This limitation, in my judgment, clearly reveals that the legislators' concern related to the due process requirement or providing defendants with counsel in criminal matters.

The legislature demonstrated its ability to clearly express its intent to authorize appointed counsel in civil matters when it enacted the only statute expressly providing for the appointment of counsel in a civil matter, the post-conviction hearing legislation (Ill. Rev. Stat. 1979, ch. 38, par. 122—1). While characterized as civil in nature, even those proceedings are the direct result of the defendant's criminal conviction and involve only its validity. The fact that the legislature has chosen not to include similarly clear provisions in the statute under consideration is, to me, persuasive evidence that the legislature will indeed be surprised to learn that it intended this statute to authorize courts to appoint the public defender to prosecute civil matters for indigent prisoners.

Moreover, the majority's expansion of appointed counsel's duties is not desirable. The offices of the public defenders and the State Appellate Defender are presently experiencing severe problems in coping with their ex-

tremely heavy caseloads. (See, *e.g.,* 1982 Fiscal Report, Office of the State Appellate Defender, at 44-48.) In fact, in an effort to reduce existing delay in those offices, this court has considered it necessary to solicit the assistance of volunteers through the organized bar, and a significant number of cases are presently being handled in that fashion. (See 1982 Fiscal Report, Office of the State Appellate Defender, at 2, 44-49.) Rather than add to that burden, thereby increasing the amount of delay, it seems to me that the representation afforded indigent prisoners by such groups as the Illinois Prisoners Association is sufficient to offer these individuals meaningful access to courts for the purposes of prosecuting noncriminal matters. (For a listing of the various groups offering legal services to indigent prisoners, see Directory, Prisoner's Legal Services, State of Illinois, compiled by the Lawyers Committee for Civil Rights Under Law, Inc. (1978).) Indeed, because of the assistance provided by these groups, indigent prisoners may now enjoy greater access to courts than do law-abiding indigents or even some citizens who are neither prisoners nor indigents.

For the reasons stated, I consider the majority holding expanding the statute to be both undesirable and inconsistent with the well-established rules of statutory interpretation.

RYAN, C.J., and WARD, J., join in this dissent.

JUSTICE WARD, also dissenting:

I join in Justice Underwood's dissent. Public defenders' offices, understaffed and overworked, will be dismayed at the majority's action. They must now go forward, as the majority puts it, "in the uncharted sea of civil litigation for prisoners." (92 Ill. 2d at 227.) It is more facilely said than done.

The involved statute, as has been stated, provides:

"The Public Defender, as directed by the court, shall

act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel." (Ill. Rev. Stat. 1979, ch. 34, par. 5604.)

The language "for all persons who are held in custody" has been considered to mean those who were in custody and against whom no charges had been placed. Under those circumstances, relatives or friends of the prisoner, or the prisoner himself, might seek a court's assistance, by way of *habeas corpus* or otherwise, to have the prisoner released or to have a charge filed against him so that a bond might be set. The language of the statute authorizes the court to appoint the public defender to act as attorney before the court for such persons who are unable to employ counsel. Following the order or the sequence of a criminal case, the statute then goes on to authorize a court to appoint the public defender to act also for persons who have already been charged with the commission of criminal offenses.

I agree with Justice Underwood that there was no legislative intention to authorize courts to appoint the public defender to prosecute civil matters for indigent prisoners. In instances where counsel should be appointed, counsel other than the public defender should be designated.

RYAN, C.J., and UNDERWOOD, J., join in this dissent.