(No. 60016

JAMES J. DOHERTY, Public Defender, Plaintiff, v. WILLIAM T. CAISLEY, Judge, *et al.*, Defendants.

*Opinion filed October 19, 1984.*

UNDERWOOD, J., and RYAN, C.J., dissenting.

James J. Doherty, Public Defender, *pro se*, and John Thomas Moran, of Chicago, for plaintiff.

Neil F. Hartigan, Attorney General, of Springfield (Robert H. McFarland and James P. Nally, Assistant Attorneys General, of Chicago, of counsel), for defendants.

JUSTICE MORAN delivered the opinion of the court:

This case involves a complaint seeking original writs of *mandamus* and prohibition or in the alternative for supervisory orders. The complaint was filed by James Doherty in his capacity as public defender of Cook County (plaintiff). The defendants are William T. Caisley, circuit judge of Livingston County; Richard Mills, presiding judge of the Fourth District Appellate Court; and Michael Lane, Director of the Illinois Department of Corrections. The plaintiff contends that the orders of the circuit court, which appointed the Cook County public defender to represent two inmates committed to the Pontiac Correctional Center in Livingston County, are

void. We granted leave to file a complaint for writs of *mandamus* and prohibition. 87 Ill. 2d R. 381(a).

The complaint presents a single question: whether the circuit court of Livingston County exceeded its authority when it appointed the public defender of Cook County to represent, in civil actions, two inmates confined in the Pontiac Correctional Center located in Livingston County.

The facts are not in dispute. The two inmates, Byron Smith and Thomas Skinner, are incarcerated as a result of sentences imposed by the circuit court of Cook County. The public defender of Cook County represented Smith in the criminal proceedings which led to his incarceration. Smith was initially convicted in 1975 of delivery of a controlled substance and was sentenced to a period of probation. While on probation, he was again convicted, in Cook County, of armed robbery and aggravated kidnaping. As a result, he was sentenced to a term of imprisonment. These latter convictions also served as the basis to revoke Smith's probation on the 1975 drug charge, and he was resentenced. The circuit court ordered that the term of imprisonment, imposed on the drug conviction, be served by Smith concurrently with the term of imprisonment imposed for the armed-robbery and aggravated-kidnaping convictions.

On July 15, 1983, Smith filed a *pro se* complaint for a writ of *mandamus* in the circuit court of Livingston County, claiming that he had not received proper credit for the time he had served on probation. That same day, Judge Caisley appointed the public defender of Livingston County as counsel for Smith and set the matter for hearing on September 28, 1983. Appointed counsel filed no amended pleadings, and on September 9, 1983, the Attorney General filed a motion to dismiss. Neither Smith nor counsel responded. On September 28, after hearing argument, the circuit court dismissed Smith's

complaint. Thereafter, Smith filed a timely notice of appeal which included a request for the appointment of counsel on appeal.

Smith requested that the court appoint an attorney who had been practicing for at least five years and who had adequate experience in the field of criminal law. He specifically refused a public defender and requested that the appointed attorney be a member of the Illinois State Bar Association. The trial court attempted to meet the inmate's demands but, when unable to do so, denied Smith's request for counsel without prejudice to his right to make that same request in the appellate court. The court stated, in a letter to the defendant dated November 17, 1983, that Smith's request for appointed counsel had been denied because of the court's inability to meet the specific demands made by the inmate.

On November 18, 1983, Justice Mills of the Fourth District Appellate Court, by order, remanded the cause to Judge Caisley for the limited purpose of determining whether Smith was entitled to counsel under the guidelines of *Tedder v. Fairman* (1982), 92 Ill. 2d 216. The appellate court further directed the circuit court to appoint counsel to represent Smith on appeal if the trial court determined that he was entitled to such representation. On remand, the circuit court entered its order appointing the public defender of Cook County as appellate counsel for Smith. Plaintiff, by affidavit, avers that the first knowledge he had of such appointment came on February 14, 1984.

Thereafter, on April 3, 1984, the plaintiff received notice from the clerk of the fourth appellate district that his office had been appointed by Judge Caisley to represent another inmate at the Pontiac Correctional Center, Thomas Skinner, in his civil appeal. Skinner was appealing from the judgment of the circuit court of Livingston County which dismissed his *pro se* motion seeking *man-*

*damus* relief. In that motion, Skinner alleged that he was denied parole for improper reasons. In his order appointing plaintiff as counsel for Skinner, Judge Caisley found that Skinner had been a resident of Cook County at the time he was sentenced to the Pontiac Correctional Center. Further, the court found that Skinner was indigent and that he lacked the necessary legal experience to represent himself. The court also noted that Skinner had been represented by private counsel at the time he was sentenced, but that private counsel had since withdrawn from representation of the inmate and no longer resided in this State. Plaintiff did not attempt to withdraw as appointed counsel for either Smith or Skinner in the appellate court. Rather, he moved this court for leave to file a complaint for writs of *mandamus* and prohibition or in the alternative for supervisory orders.

Plaintiff argues that the trial court of Livingston County lacked authority to appoint the public defender of another county to represent inmates on noncriminal legal matters. Defendants, relying on our decision in *Tedder*, maintain that the circuit court has discretionary power to appoint a public defender to represent indigent inmates in civil actions which relate to the condition of the inmates' confinement. Further, defendants contend that the circuit court of Livingston County did not abuse its discretion in appointing the plaintiff as counsel for Smith and Skinner since a sufficient nexus exists between the inmates and Cook County.

Complaints for writs of *mandamus*, like those filed by the inmates in the case at bar, are civil in nature. Consequently, indigent prisoners do not have a constitutional right to the appointment of counsel in such cases. (*Tedder v. Fairman* (1982), 92 Ill. 2d 216, 225; *People ex rel. Ross v. Ragen* (1945), 391 Ill. 419, 422.) They do, however, enjoy the constitutional right of access to the courts. (*Bounds v. Smith* (1977), 430 U.S. 817, 820-21,

52 L. Ed. 2d 72, 78, 97 S. Ct. 1491, 1494; *Younger v. Gilmore* (1971), 404 U.S. 15, 30 L. Ed. 2d 142, 92 S. Ct. 250.) This right is founded on the due process clause, and is necessary since an indigent prisoner is limited in seeking legal redress in the courts by the condition of his confinement. *Wolff v. McDonnell* (1974), 418 U.S. 539, 579, 41 L. Ed. 2d 935, 964, 94 S. Ct. 2963, 2986; *Tedder v. Fairman* (1982), 92 Ill. 2d 216, 222-23.

The history of this right need not be outlined here, as we discussed it in depth in our decision in *Tedder*. For the purpose of this opinion, it is sufficient to note that the Supreme Court has never required a State to appoint counsel to represent indigent inmates in civil actions in order to satisfy the requirements of " '[m]eaningful access' to the courts." (*Bounds v. Smith* (1977), 430 U.S. 817, 823, 52 L. Ed. 2d 72, 80, 97 S. Ct. 1491, 1495, quoting *Ross v. Moffitt* (1974), 417 U.S. 600, 611, 41 L. Ed. 2d 341, 351, 94 S. Ct. 2437, 2444.) Nevertheless it has considered what is and what is not included in the term "meaningful access to the courts." See *Ex parte Hull* (1941), 312 U.S. 546, 85 L. Ed. 1034, 61 S. Ct. 640 (wherein the court struck down a prison regulation which required prior approval from correction officials before inmates could file *habeas corpus* complaints); *Johnson v. Avery* (1969), 393 U.S. 483, 21 L. Ed. 2d 718, 89 S. Ct. 747 (wherein the court held that a State could not validly enforce its prison regulation barring inmates from assisting one another in the preparation of petitions for post-conviction relief, unless and until the State provided some reasonable alternative); *Younger v. Gilmore* (1971), 404 U.S. 15, 30 L. Ed. 2d 142, 92 S. Ct. 250 (*per curiam*) (wherein the court affirmed the order of the district court which required the Department of Corrections in California to expand its prison-law libraries or provide other means of legal assistance); *Bound v. Smith* (1977), 430 U.S. 817, 52 L. Ed. 2d 72,

97 S. Ct. 1491 (wherein the court held that prison authorities were required to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law).

In *Tedder*, this court recognized the limits of the above-cited Supreme Court holdings, stating: "We cannot find sufficient support in any of the United States Supreme Court holdings to say that an indigent prisoner has a constitutional right to appointed counsel in a civil suit either at trial or on appeal." (*Tedder v. Fairman* (1982), 92 Ill. 2d 216, 225.) Nevertheless, this court found that while the trial court was under *no duty* to appoint an assistant public defender to represent indigent inmates in civil actions relating to the conditions of their confinement, the court had discretion, under the provisions of "An Act in relation to the office of Public Defender" (the Public Defender Act), to make such an appointment. Specifically, the court relied upon section 4 of the Public Defender Act (Ill. Rev. Stat. 1983, ch. 34, par. 5604). That section provides in pertinent part: "The Public Defender, as directed by the court, shall act as attorney, without fee, before any court within any county for all persons who are held in custody ***." (Ill. Rev. Stat. 1983, ch. 34, par. 5604.) Since the statutory language did not preclude appointment of the public defender in *civil* matters relating to the conditions of an inmate's confinement, the court held that the circuit court had discretion, *not a duty*, to appoint the public defender to represent those "held in custody." *Cf.* Ill. Rev. Stat. 1983, ch. 38, par. 208–10(a).

Although the language of the Public Defender Act does not preclude appointment of the public defender in civil matters which relate to the conditions of an inmate's confinement, there is language in the Act that would appear to prevent the appointment of another

county's public defender. Section 1.2 of the Act provides in part as follows:

"Any 2 or more *adjoining counties* of this State *that are within the same judicial circuit,* may by joint resolution of the several county boards involved, create a common office of Public Defender for the counties so joined." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 34, par. 5601.2.

Further, section 7 states:

"The County Board shall provide suitable office quarters for the use of the Public Defender, and shall pay out of the county treasury for necessary office, travel and other expenses incurred in the defense of cases. In counties of less than 500,000 population, such payment shall be made after *the circuit court of the county* approves such expenses as being necessary and proper. *In cases where 2 or more adjoining counties have joined to form a common office of Public Defender, the expenses incurred under this Section shall be paid as provided for in a joint resolution of the various county boards involved.* (Emphasis added.) Ill. Rev. Stat. 1983, ch. 34, par. 5607.

Unlike the State Appellate Defender, which is an agency of State government (Ill. Rev. Stat. 1983, ch. 38, par. 208—3), the office of public defender is a county office. The above-quoted provisions evidence an intent on the part of the legislature to establish autonomous public-defender positions in those counties that create such an office. These offices are to be financed by the county boards, and only where two or more counties are *adjoining* may different counties share a common office. Moreover, the provision in section 1.2 that adjoining counties may create a common office only if they are located within the same judicial circuit contradicts the assertion of the defendants in the case at bar. Obviously, this requirement was incorporated into the Act to avoid the problems inherent in the public defender's office of a county being called upon by a judicial circuit other than

its own.

Livingston County and Cook County are not adjoining counties, nor are they located within the same judicial circuit. Under these circumstances, the eleventh judicial circuit cannot justify its appointment of plaintiff by claiming the trial court had discretion under the Public Defender Act. In appointing the public defender of Cook County, the circuit court of Livingston County exceeded its authority, as the Act makes no provision for such an appointment, and the language of the Act negates such an intent on the part of the legislature.

Since *mandamus* generally will not lie to expunge an order involving the exercise of judgment and discretion (*Chicago & North Western Transportation Co. v. Matoesian* (1981), 85 Ill. 2d 404, 406), we deem this case to be an appropriate one for the exercise of our supervisory authority (*People ex rel. Carey v. Strayhorn* (1975), 61 Ill. 2d 85, 91-92).

The writs of *mandamus* and prohibition are therefore denied, and in the exercise of our supervisory jurisdiction Judge Caisley is directed to vacate his order appointing the public defender of Cook County in these cases.

*Writs denied; supervisory order entered.*

JUSTICE UNDERWOOD, dissenting:

In *Tedder* v. *Fairman* (1982), 92 Ill. 2d 216, a majority of this court concluded, erroneously in my judgment, that the legislature intended to authorize the appointment of public defenders to represent indigent prison inmates in civil cases. Those of us who dissented in *Tedder* emphasized the problems which that decision would pose for public defenders with their already staggering criminal caseloads. Those problems are now aggravated by the majority's action, which places the entire burden of

representation in civil cases upon the public defenders in those counties in which State correctional facilities are located. In so doing the majority has again, in my opinion, read into the statute a nonexistent legislative intention, thereby transferring to the taxpayers and public defenders in a few smaller counties all of the costs and labor associated with these civil suits. This is done despite the fact that very few of these inmates resided, committed the crime, or were convicted in these counties. My colleagues' conclusion is all the more peculiar when one considers that over 50% of all Illinois prisoners are convicted and sentenced in Cook County, which under the majority view is now completely relieved of all obligation to represent indigent inmates in civil actions since no State correctional facilities are located there. That the General Assembly could not have intended such an anomalous and grossly inequitable result is self-evident and should finally convince us that we should now reconsider and overrule *Tedder*.

As those of us who dissented in *Tedder* also noted, the Public Defender Act (Ill. Rev. Stat. 1983, ch. 34, par. 5601 *et seq.*) simply does not permit the appointment of public defenders to prosecute civil actions. Indeed, section 7 of the Act expressly provides that public defenders are to be paid only for "expenses incurred in the *defense* of cases." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 34, par. 5607.) In addition to emphasizing the total absence of statutory authorization and enormously increased public defender caseload, we pointed out that these civil appointments would create the odd situation of prison inmates being accorded greater access to the courts than law-abiding citizens.

Since, however, the majority chooses to adhere to the notion that public defenders should represent indigent inmates in civil cases, it would, in my judgment, be far more sensible to require the appointment of a public de-

fender from the county in which the inmate was convicted. Such a method would fairly allocate throughout the State the burden of that representation in proportion to the number of inmates committed by the various counties. The larger counties would, of course, bear a larger portion of the burden, but those counties also have larger public defender staffs. Those staffs, like most, if not all, public defender's staffs, are already overburdened, but adding to the public defenders' caseload is simply the inevitable result of *Tedder*. And apportioning the burden as I suggest certainly seems more equitable than imposing it upon a handful of counties, many of which are quite small. It is difficult to understand the majority's claim that this approach is prohibited by sections 1.2 and 7 of the Act (Ill. Rev. Stat. 1983, ch. 34, pars. 5601.2, 5607), as those sections merely set forth the conditions under which two or more counties can form and operate a single public defender office. On the contrary, section 4, relied on by the majority in *Tedder*, specifically states that public defenders may "act as attorney *** *before any court within any county ***.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 34, par. 5604.) Such language, in my opinion, requires the conclusion that if public defenders are to be appointed in these cases, they ought to be appointed from the county of conviction as the circuit judge ordered. I would therefore deny the writ.

CHIEF JUSTICE RYAN joins in this dissent.